MILO G. DIER, APPELLEE, V. MARJORIE F. DIER, APPELLANT.

4 N. W. (2d) 731

FILED JULY 3, 1942. No. 31222.

*C. M. Skiles* and *Frederick J. Patz,* for appellant.

*Richard O. Johnson, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

EBERLY, J.

This is a proceeding for divorce and custody of an eight-year-old son, instituted by Milo G. Dier, as plaintiff, against Marjorie F. Dier, his wife, as defendant, in the district court for Lancaster county.

In his amended petition plaintiff charges generally, first, that defendant was guilty of gross, wanton and extreme cruelty towards plaintiff; second, that in 1937 the defendant committed adultery with two men named by him, and that thereafter defendant "consorted" and "associated" with a third person also named in plaintiff's amended petition.

The defendant, in her answer and cross-petition, denies generally the allegations of plaintiff's amended petition; admits residence, date and place of marriage, and birth of the child; and denies specifically the charges of adultery made. Further, in such cross-petition defendant sets forth and charges with particularity a course of cruel treatment of her by the plaintiff during the continuance of their married life, which was "such as to destroy her happiness, injure her health and make it impossible for the plaintiff and defendant to again live together as husband and wife."

By agreement of parties in open court it was stipulated that this case be tried as if plaintiff filed a general denial to the defendant's answer and cross-petition.

A trial to the court resulted in a general finding in favor of plaintiff upon his amended petition, and against the defendant upon her cross-petition. However, the district court found specially "that defendant has been guilty of extreme cruelty of such a nature as to destroy the legitimate objects of matrimony, * * * although this court does not find that she is guilty of adultery;" and also that the defendant is not a fit and suitable person to have the care, custody and control of their minor child. The district court awarded the defendant the sum of $300 "in lieu of all other alimony or support money." The care, custody and control of the nine-year-old son of these parties were awarded to the plaintiff until the further order of the court.

The trial court overruled the defendant's motion for a new trial, and she appeals. The plaintiff prosecuted no cross-appeal.

The appellant (defendant) presents three issues for our consideration: Was the trial court justified, first, in granting a divorce to the plaintiff; second, in limiting the amount of permanent alimony granted to appellant to the sum of $300; and, third, in awarding custody of the child to the plaintiff.

The effect and purpose of this appeal is governed by section 20-1925, Comp. St. 1929, which provides:

"In all appeals from the district court to the supreme

court in suits in equity, wherein review of some or all of the findings of fact of the district court is asked by the appellant, it shall be the duty of the supreme court to retry the issue or issues of fact involved in the finding or findings of fact complained of upon the evidence preserved in the bill of exceptions, and upon trial *de novo* of such question or questions of fact, reach an independent conclusion as to what finding or findings are required under the pleadings and all the evidence, without reference to the conclusion reached in the district court or the fact that there may be some evidence in support thereof." See *Westphalen v. Westphalen,* 115 Neb. 217, 212 N. W. 429; *O'Reilly v. O'Reilly,* 120 Neb. 720, 234 N. W. 916.

It is the duty of this court "to retry the issue or issues of fact involved in the finding or findings of fact complained of upon the evidence preserved in the bill of exceptions." We are simply required to try and independently decide only such issues in the case as are presented by the appeal. *Northwestern Mutual Life Ins. Co. v. Mallory,* 93 Neb. 579, 141 N. W. 190.

"The usual presumptions, in favor of a finding of the trial court, do not obtain, on appeal in an equity case." *Michigan Trust Co. v. City of Red Cloud,* 69 Neb. 585, 592, 96 N. W. 140, 98 N. W. 413. See *Colby v. Foxworthy,* 80 Neb. 244, 115 N. W. 1076.

However, when the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite. *Magill v. Magill,* 114 Neb. 636, 209 N. W. 241; *Peterson v. Winkelmann,* 114 Neb. 714, 209 N. W. 499; *Enterprise Planing Mill Co. v. Methodist Episcopal Church,* 100 Neb. 29, 158 N. W. 386; *Sherman v. Great Western Sugar Co.,* 127 Neb. 505, 255 N. W. 772; *Olson Construction Co. v. Commercial Bldg. & Investment Co.,* 127 Neb. 609, 256 N. W. 22.

In a trial *de novo* in this court, the issues of fact involved

must be determined in accordance with the ordinary rules governing the burden of proof and the competency and materiality of evidence. *Beckman v. Lincoln & N. W. R. Co.*, 79 Neb. 89, 112 N. W. 348.

"Upon appeal in actions in equity, this court will not consider incompetent evidence received by the trial court." *Jones v. Dooley*, 107 Neb. 162, 185 N. W. 307.

It is to be noted that the plaintiff, as a ground for divorce, expressly charges the defendant with the commission of adultery with parties named in his amended petition. These charges the defendant expressly denied both in pleading and in evidence. She is presumed to be innocent. The burden of proof was, by the nature of the issue, imposed on the plaintiff. The judgment of the trial court that "this court does not find that she (defendant) is guilty of adultery" is a decision of this issue in favor of the defendant, and is tantamount to an express finding that adultery was not committed by her. No cross-appeal has been taken from this determination by the plaintiff.

The sole remaining issues of fact involved in the findings of fact complained of by the defendant are: First, was defendant guilty of extreme cruelty; second, whether the defendant is a fit and suitable person to have the care, custody and control of her son, a minor child; and, third, the amount of alimony to which the defendant is entitled.

We are committed to the doctrine:

" 'Jurisdiction relative to divorce and alimony is given by statute, and every power exercised by the court with reference thereto must look for its source in the statute, or it does not exist.' *Cizek v. Cizek*, 69 Neb. 800, 99 N. W. 28." *Brown v. Brown*, 130 Neb. 487, 265 N. W. 556.

We define the statutory term, "extreme cruelty" as follows:

" 'Extreme cruelty, to justify a decree of divorce, where there is no physical injury or violence, must be of such a character as to destroy the peace of mind or seriously impair the bodily health of the unoffending party, or such as destroys the legitimate ends and objects of matrimony.'

*Chipperfield v. Chipperfield,* 121 Neb. 204, 236 N. W. 440." *Brown v. Brown, supra.*

Recurring to the petition on which the case was tried in the district court, we are confronted with a violation of the general rule of pleading governing this cause of action, which is: "Cruelty or extreme cruelty within the meaning of the statute must, of course, be alleged where a divorce is sought on this ground, but an allegation that defendant has been guilty of cruelty or extreme cruelty in the language of the statute generally is not sufficient; the particular facts relied on as constituting the cruelty should be set forth in detail, unless it is otherwise provided by statute." 27 C. J. S. 698, sec. 108c.

Still it appears that, no objections to the pleadings having been presented in the trial court, they will be deemed waived on appeal, and the evidence adduced will be considered so far as applicable to the controversy presented, in view of the terms of the governing statute.

"As a general rule, adultery does not of itself constitute cruelty as a ground for divorce." 27 C. J. S. 558, sec. 28c. See, also, *Lanyon's Detective Agency v. Cochrane,* 240 N. Y. 274, 148 N. E. 520, 41 A. L. R. 1432; *Hofmann v. Hofmann,* 232 N. Y. 215, 133 N. E. 450.

It follows that the charges of adultery made in plaintiff's amended petition and the evidence adduced in support thereof are not necessary for our consideration in the determination of the question of "extreme cruelty," in view of the unchallenged adjudication of that issue by the trial court.

It now becomes the duty of this court to retry *de novo* the issues of fact involved in the charge of "extreme cruelty" upon the evidence preserved in the bill of exceptions.

It is to be borne in mind that this issue must be determined here in accordance with the ordinary rules governing the burden of proof and the competency and materiality of evidence introduced at the trial, as disclosed by the bill of exceptions duly settled and allowed by the trial court. This record discloses that after both plaintiff and defendant had finally rested, the trial judge announced from the bench:

"I will direct that Exhibit No. 4, the report of the investigator, be placed in evidence and made a part of the record in this case. If counsel for either or both parties care to cross-examine any of the persons who furnished information to the probation officer contained in this report, or if counsel desire to cross-examine the probation officer upon the report, the Court will forthwith bring said parties before the court for the purpose of cross-examination."

Exhibit No. 4 is an unsigned, typewritten report containing purported statements as to facts by the parties to this controversy relative to the merits thereof, and by other persons purporting to be familiar with them, and also, in part, the conclusions of the "investigator" thereon. It was not subscribed to by its author, or officer preparing the same; neither was it sworn to by the investigator or by the parties whose statements were taken by him; nor did it come from the witness-stand during the trial from the mouth of a testifying witness under the sanction of an oath. We infer that it was originally prepared pursuant to section 42-307, Comp. St. 1929, which is, in part as follows:

" * * * Provided, that it shall be the duty of the court to make independent investigations of the merits of all default cases (for divorce) and cases where minor children are involved through a probation officer or county superintendent of child welfare or other agency." But the statutes in no place direct that such report so made shall be deemed or considered as competent evidence, and, as such, binding upon the parties to the litigation.

Section 20-1237, Comp. St. 1929, provides: "Before testifying the witness shall be sworn to testify the truth, the whole truth, and nothing but the truth. The mode of administering an oath shall be such as is most binding upon the conscience of the witness."

Not only were the unsworn statements contained in this report, exhibit No. 4, thus received as proof, but the parties were deprived of their right of cross-examination. True cross-examination involves the presence of the cross examiner when and where the direct evidence is adduced. "The

basis upon which the right of cross-examination is founded has been said to be that *ex parte* statements are too uncertain and unreliable to be considered in the investigation of controverted facts, and should not therefore be received in evidence." 3 Ency. of Evidence, 807. Indeed, this *ex parte* statement or report, introduced in evidence as exhibit No. 4, is mere hearsay, and wholly incompetent.

"Hearsay may be defined to be any statement, verbal or written, the persuasiveness or probative value of which depends partly or wholly upon something other than the credit to be given to the witness who utters the statement or the instrument which contains it, and renders necessary a resort to and belief in the veracity and competency of some other person." 6 Ency. of Evidence, 443. See, also, 1 Greenleaf, Evidence (13th ed.) 121; *Hopt v. Utah,* 110 U. S. 574, 4 S. Ct. 202.

Exhibit No. 4, therefore, is incompetent and wholly inadmissible, so far as review of the proceedings is concerned, must be disregarded, and will not be considered. *Jones v. Dooley,* 107 Neb. 162, 185 N. W. 307.

This disposition of Exhibit No. 4 must not be deemed as a judicial modification or curtailment of section 42-307, Comp. St. 1929, or as a violation of the legislative intent thereby expressed.

It may well be said that "The apportionment of the task of adducing evidence is one of the most characteristic features of the Anglo-American system. It is placed wholly upon the *parties* to the litigation; it is not required or expected of the *judge.*" 9 Wigmore, Evidence (3d ed.) sec. 2483.

While the judge in ordinary civil and criminal cases is vested with ample power to call forth evidence, "That he has no burden or duty of doing so is plain in the law. But the general judicial power itself, expressly allotted in every state Constitution, implies inherently a power to investigate as auxiliary to the power to decide; and the power to investigate implies necessarily a power to summon and to question witnesses." 9 Wigmore, Evidence (3d ed.) sec. 2484.

In the instant case we are dealing with a form of pro-

ceeding in which the state or society has an actual interest. Section 42-307, Comp. St. 1929, imposes the mandatory duty to have investigations made where minor children are involved. Under these circumstances, it would seem that the power to summon and question witnesses in open court on the trial of the merits, on the court's own motion but subject to the right of cross-examination by the parties to the proceeding, is necessarily implied and should be unquestioned. That method alone secures "due process" in the proceedings in courts of original jurisdiction and renders possible the right to be heard in courts of last resort which our state Constitution guarantees. Indeed, Wigmore lays down the principle: "The trial judge, then, may *call a witness* not called by the parties, or may consult any source of information on topics subject to *judicial notice,* or may *put additional questions* to a witness called by the parties, or may 'ex mero motu' *exclude inadmissible evidence,* or may *take a view* of a place or thing." 9 Wigmore, Evidence (3d ed.) sec. 2484.

It is equally clear, however, and upon the same principle, under section 42-307, Comp. St. 1929, that neither a judge, a juror, a judge's representative investigator, nor the party whose statement such investigator secures may lawfully contribute any competent testimony for the consideration of a jury or court, unless he take the stand as a witness, is sworn, and is subjected to the usual test of cross-examination. 6 Wigmore, Evidence (3d ed.) sec. 1805.

We have carefully considered the evidence as an entirety, excluding from consideration exhibit No. 4. It would accomplish no good purpose to set forth the details of the proof. Both of these parties are clearly at fault, but weighing all the facts disclosed by the record, in the light of the further actuality that there is clearly an irreconcilable conflict in the evidence, and bearing in mind that the trial court heard the conflicting testimony, observed the witnesses and their manner of testifying, accepted one version of the facts rather than the other, and adjudged that plaintiff's charge of extreme cruelty was established by a preponderance of

proof, we conclude that the evidence requires a finding for the plaintiff on his charge of extreme cruelty committed by the defendant.

However, we are not in agreement with the trial court on the subjects of the custody of the minor son and the amount of alimony to which defendant is entitled in her own right, and in these respects its decree will be modified.

In divorce actions, in making disposition of the custody of a child of tender years, the policy of the law as declared by the courts is to look to the welfare and best interests of the child. *Hammond v. Hammond*, 103 Neb. 860, 174 N. W. 865; *Nathan v. Nathan*, 102 Neb. 59, 165 N. W. 955; *Boxa v. Boxa*, 92 Neb. 78, 137 N. W. 986; *Wilkins v. Wilkins*, 84 Neb. 206, 120 N. W. 907; *Feather v. Feather*, 112 Neb. 315, 199 N. W. 533.

While the plaintiff doubtless has, as he testifies, a tender regard for his son, the nature of his work is such that he could not give the child his personal care and attention during the greater part of the day, because the duties of his employment would keep him away from the presence of the child. The testimony in the record is that the defendant has been an industrious, loving, and careful mother. It must be conceded that while these parties were living together this son showed every evidence of good care. We think it generally conceded that the best interests and welfare of a child of tender years will be best subserved by placing him in the custody of his natural mother, if she is a fit and proper person. The record does not disclose anything that would justify denying to this mother the care and custody of her nine-year-old son. Indeed, the welfare and best interests of the child demand that its custody be committed to the mother, which is hereby awarded and ordered. But the plaintiff will be permitted to visit the child at all reasonable times and to have the child visit him at reasonable intervals.

The plaintiff is a man of good health, and is employed at this time at a guaranteed salary of $30 a week. Further, his contract of employment gives him a bonus in addition

to the regular salary guaranteed by his employer. His total recompense admittedly amounts to from $35 to $40 a week. The parties were married when the defendant was still in high school. Since her marriage her time has been taken up by her household duties and care of her child, and she has never been able to fit herself as a wage-earner. The parties have accumulated very little property, excepting an automobile and a small amount of household effects.

Under the facts disclosed, we find that defendant is entitled to an allowance of $500 as her permanent alimony; also, to a reasonable allowance for the support of the minor child, which we fix at $25 a month, and, in addition, the sum of $100 as attorney fees in this court.

It is therefore ordered and adjudged that the plaintiff pay to the clerk of the district court for Lancaster county within 60 days from the date of this judgment the sum of $500 for defendant as her permanent alimony; and in addition plaintiff shall pay to such clerk for the support of the minor child the sum of $25 a month during its minority; and further plaintiff shall pay the sum of $100 as attorneys' fees for defendant's attorneys to be taxed as costs. Leave is given either party to apply to the district court for a modification of the order here made, with respect to custody of the minor child and allowance for its support, upon showing made of changed conditions.

The judgment of the district court, as thus modified, is

AFFIRMED.