JOHN H. SHERMAN, APPELLANT, v. GREAT WESTERN SUGAR COMPANY, APPELLEE.

FILED JULY 6, 1934. No. 29158.

*Raymond & Raymond,* for appellant.

*Mothersead & York, contra.*

Heard before ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and LESLIE and RYAN, District Judges.

ROSE, J.

This is a proceeding under the workmen's compensation law. Comp. St. 1929, secs. 48-101 to 48-161. John H. Sherman, employee, is plaintiff. Great Western Sugar Company, employer, is defendant. In the petition plaintiff stated that while he was engaged in the duties of his employment November 15, 1932, in defendant's sugar factory at Scottsbluff, attempting to couple a steam pipe above him, it fell and struck him on the head, neck and shoulders. He alleged as a result that he fell to the floor, became unconscious, and was taken to a hospital in Scottsbluff, where he was confined two weeks; that he suffered extreme pain and nervous shock. He pleaded injury and disability as follows:

"That plaintiff suffered extreme pain and nervous shock from said injury; that said injury resulted in a fracture and dislocation of one or more of the cervical vertebræ,

a disalignment of the cervical spine and an impairment in rotation and lateral movement of the head and serious injury to the head, muscles and nerves causing pain, numbness, tremor, jerking and such numbness and partial paralysis of the arms and legs as disables the plaintiff from doing or performing any manual labor in the line of his work or from doing any manual labor of any kind, or from engaging in any work requiring steadiness of nerves or strength of his arms and legs, and that plaintiff has been rendered extremely nervous and sensitive to shock and has considerable difficulty in getting around even in a moderate or slow walk, and that said injuries are permanent to the best of his knowledge and belief."

Defendant paid plaintiff $75 and tendered in addition $30 as the limit of compensation to which he was entitled. The general theory of the defense is indicated by the following allegations of defendant's answer:

"Defendant alleges the fact to be that the plaintiff sustained no injuries except slight contusions and bruises of the muscles in the region of the left shoulder and back, and that the plaintiff had fully and completely recovered from such injuries on or prior to December 28, 1932, and that the plaintiff does not now have and since said December 28, 1932, has not had, any disability whatsoever, either temporary or permanent, partial or total, as a result of any accident or personal injury arising out of and in the course of his employment by the defendant."

The compensation commissioner disallowed the claim of plaintiff, who appealed to the district court. Upon a trial therein the issues were found to be in favor of defendant and the proceeding was dismissed. Plaintiff appealed to the supreme court, where he is entitled to a trial *de novo* on the evidence adduced below.

Compensable injury arising out of and in the course of plaintiff's employment by defendant and liability of the latter for additional compensation are the issues. It seems clear from the evidence that at the time of the trial the use of plaintiff's right arm and right shoulder was im-

paired to some extent at least. Whether this condition was caused by the industrial accident and injury pleaded by plaintiff is the controlling question for consideration. The evidence is conflicting. In reaching a conclusion below the trial court had an advantage of which the appellate court is deprived. The opportunity to observe the witnesses while testifying was present below and is absent on appeal. Lack of observation of witnesses while testifying is, on appeal, a handicap in determining an issue of fact on conflicting evidence. For these reasons the fact that the district court gave credence to the testimony of some witnesses rather than to contradictory testimony of other witnesses may be considered on a trial *de novo*. *Jones v. Dooley*, 107 Neb. 162; *Southern Surety Co. v. Parmely*, 121 Neb. 146; *Ellingwood v. Schellberg*, 121 Neb. 207; *Cary v. Reiter*, 122 Neb. 476; *State v. Cheyenne County*, 123 Neb. 1; *City of Wilber v. Bednar*, 123 Neb. 324; *Stone v. Thomson Co.*, 124 Neb. 181.

Plaintiff testified to the accident as alleged by him; to the treatment he received from physicians; to injuries to his neck, right shoulder, right arm and right leg; to symptoms of paralysis; to his suffering; to his incapacity for manual labor.

Injury to nerves and spine and resulting disability, if any, were proper subjects of expert testimony. Plaintiff called two physicians to testify as experts. They did not agree on all details of plaintiff's injuries or on what caused his disability. One of the witnesses was of the opinion that the spinal cord was uninjured and that there was no evidence of paralysis or injury to the brain, but that he could not account for the injury to the right leg. The other physician who testified for plaintiff expressed the opinion that the spinal cord was injured and that there was partial paralysis or a form of ataxia in the right side. Both of these experts had a history of the case and had the benefit of physical examinations and radiographs. Based on the X-ray pictures, physical examinations and appearance of plaintiff, these experts testified

in substance that there was a misalignment of the cervical vertebræ, indicating there had been a fracture of one of them; that the right arm and right side of plantiff's body are affected; that, instead of carrying his head normally, he carries it rotated to the left; that his gait is stiff and somewhat awkward; that his injuries and disability are attributable to the accident in defendant's sugar factory November 15, 1932.

Experts called by defendant had the better advantage. They had examined the plaintiff at the time of the accident or soon afterward and again before testifying. In addition they had examined the radiographs used by plaintiff's witnesses and had the benefit of the latter's testimony at the trial. The physician who attended plaintiff promptly after the accident and during the time he was in the hospital at Scottsbluff testified in substance that he took X-ray pictures of plaintiff's shoulder and lumbar spine, the latter of which now shows no injury; that plaintiff had a contusion over the left shoulder and in the lumbar region; that plaintiff made no complaint of any injury to his neck—the cervical region; that no mark was found on his head; that plaintiff recovered from the accidental injuries and was discharged by witness in that condition late in December, 1932, or in early January, following; that witness took an X-ray picture of plaintiff's cervical spine in July, 1933, and that it did not show any misalignment or misplacement of the cervical vertebræ, leaving no present disability as a result of the accident.

After plaintiff was told he had recovered from his accidental injuries and could go back to work, he insisted he was still disabled, and at the suggestion of defendant was sent to Denver for examination by Dr. Frank J. Evans, a specialist of long standing and large experience in industrial surgery and in general practice. He was also a neurologist with a general practice and was frequently employed as such by industrialists. He testified as a witness and gave a detailed history of the case as

given by plaintiff, made a physical examination of him in Denver and again at Scottsbluff before the trial, examined the X-ray pictures used by the experts for plaintiff and testified that the bodies of the cervical vertebræ are in true anatomical alignment; that he saw no pathological injury to the bones of the neck or to the nerves and that plaintiff's present condition is in no way attributable to the accident. On behalf of the defense, experts explained that the injuries to which opposing specialists testified could not have occurred without preventing plaintiff from walking and otherwise exercising as he did shortly after the accident. Cogent reasons given by defendant's experts strengthen their opinion and weaken the opinion to the contrary. When the credence given by the trial court to the witnesses for defendant and their reasons for their conclusion are considered with their opinion in the light of all the evidential facts and circumstances, the evidence preponderates in favor of defendant.

AFFIRMED.