FRANK JOHN KLINE, APPELLEE, V. METCALFE CONSTRUCTION COMPANY, A CORPORATION, ET AL., APPELLANTS.

27 N. W. 2d 383

Filed May 9, 1947. No. 32170.

*Joseph T. Votava,* for appellants.

*John C. Mullen, Gerald M. Mullen,* and *Jean M. Johnson,* for appellee.

Heard before Simmons, C. J., Paine; Carter, Yeager, and Chappell, JJ., and Nuss, District Judge.

Wenke, J.

Plaintiff, Frank John Kline, brought this action in the district court for Douglas County seeking to recover damages for loss of wages caused by the defendants' breach of his contract of employment with them. The jury returned its verdict in favor of the plaintiff and the court entered a judgment thereon. Their motion for new trial having been overruled, the defendants appeal.

This action was previously appealed to this court and is reported as Kline v. Metcalfe Construction Co., 146 Neb. 389, 19 N. W. 2d 693. The sole question involved in the former appeal was whether or not the trial court erred in directing a verdict for the defendants and entering a judgment in their favor. We therein held that the facts, as set forth in the opinion, presented a jury question and reversed the trial court and remanded the cause for further proceedings. The case was retried on the same pleadings and substantially the same evidence as before.

In Callahan v. Prewitt, on rehearing, 143 Neb. 793, 13 N. W. 2d 660, we held:

"Where on appeal findings of fact are made which become the law of the case and there is a remand for a new trial, on such retrial, such findings are binding on the parties, the trial court and this court, unless on the retrial the facts relating to the issues upon which the findings were made are materially and substantially different from those adduced on the former trial, and

the burden of showing a difference shall rest upon the party making the claim.

"The determination of the question of whether or not the evidence on a retrial is different from that adduced on an earlier trial is one for the court and not for the jury."

"Where a case has been reversed for error in instructing a verdict for defendant, and remanded generally, the holding that plaintiff is entitled to recover becomes the law of the case upon a second appeal, where the evidence upon both trials is substantially the same." Yeggy v. Fidelity Reserve Co., 118 Neb. 792, 226 N. W. 444. See, also, Fitzgerald v. Union Stock Yards Co., 91 Neb. 493, 136 N. W. 838.

Therefore the court did not err in submitting the case to the jury unless the appellants are right in their contention that certain evidence was erroneously received over their objection and, in the absence thereof, they were entitled to a directed verdict.

The error complained of is the court's ruling on exhibit No. 9.

The appellee contends that the appellants failed to set out in their motion for new trial that the court erred in admitting in evidence exhibit No. 9 and therefore this court cannot consider the trial court's ruling thereon.

Assignment No. 10 of the appellants' motion for new trial is as follows: "Because of errors in the admission of evidence on behalf of the plaintiff, duly excepted to and objected to by the defendants, and which evidence was prejudicial to said defendants."

We held in Dunbier v. Mengedoht, 119 Neb. 706, 230 N. W. 669: " 'The rulings on the admission of testimony cannot be reviewed unless the same were either by general or specific assignments called to the attention of the trial court by the motion for a new trial.' Flower v. Nichols, 55 Neb. 314."

We find the general assignment in the motion for new trial to be sufficient.

Exhibit No. 9 is a letter from the state director for Nebraska of the War Manpower Commission. It is as follows:

"June 29, 1944 * * *

"Your requests in their entirety concerning the case of Frank John Kline, 440 South 13th Street, Lincoln, Nebraska, cannot be complied with under ordinary circumstances because of an administrative policy on disclosure of information. However, we have made an attempt to assist you insofar as it is possible.

"We find from our records that Mr. Kline was released without prejudice and obtained the necessary clearance from this office. Since there is this discrepancy concerning his release, we suggest that you get in touch with his former employer, the US Engineers, as the release was signed by Captain Richard Blore, Area Engineer.

"We trust that this information will be of some assistance to you."

On the first trial this exhibit was received without objection and considered as part of the evidence in the case as is evidenced by the opinion. On the second trial objection was made thereto on the ground that it is hearsay and not the best evidence.

The objection was well taken on both grounds.

As stated in Boehmer v. Heinen, 143 Neb. 200, 9 N. W. 2d 216: "Any statement, oral or written, the persuasiveness or probative value of which depends partly or wholly on something other than the credit to be given to the witness testifying or the instrument which contains it and renders necessary a resort to the veracity and competency of some other person, is hearsay and not properly admissible as evidence." See, also, Dier v. Dier, 141 Neb. 685, 4 N. W. 2d 731; 31 C. J. S., Evidence, § 194, p. 930; and 20 Am. Jur., Evidence, § 455, p. 403.

"A certified copy of a letter written by a public officer stating in a general way what the records of his office disclose is not competent evidence of the facts stated."

Moore v. Parker, 59 Neb. 29, 80 N. W. 43. And as stated in Sampson v. Northwestern National Life Ins. Co., 85 Neb. 319, 123 N. W. 302: "The certificate offered was a mere statement by the officer of what the books contained, and was not the best evidence."

In their answer the appellants alleged: "Said plaintiff failed to obtain a 'clear release' from his employment with the Area Engineer, and the District Engineer, U. S. Engineer Office, Omaha, Nebraska, which was made a condition precedent to his employment by the defendants."

This issue was submitted to the jury as part of instruction No. 3 as follows:

"The burden is upon the plaintiff to establish by a preponderance of the evidence the following propositions: * * * 5. That he had a 'clear release' from the United States Engineer's Department with whom he was employed in Nebraska, as the term 'clear release' is hereinafter defined. * * *."

Instruction No. 4 is as follows: "By the term 'clear release' as used in these instructions is meant such release from his then employment by the U. S. Engineers as would enable him to accept work with another war agency or essential activity."

It is appellants' contention that, in the absence of exhibit No. 9, there is no evidence in the record showing that appellee was ever released from the United States Engineers and, since that was a specific requirement of the appellants' offer, they are entitled to a directed verdict.

Where the evidence is insufficient to sustain a verdict for plaintiff, dismissal of action is proper. Bauer v. Wood, 144 Neb. 14, 12 N. W. 2d 118.

As stated in 17 C. J. S., Contracts, § 42, p. 378: "* * * the offerer has a right to prescribe in his offer any conditions as to time, place, quantity, mode of acceptance, or other matters which it may please him to insert in and make a part thereof, and the acceptance,

to conclude the agreement, must in every respect meet and correspond with the offer, neither falling short of nor going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand, and, in the absence of such an acceptance, subsequent words or acts of the parties cannot create a contract."

In Evans v. Platte Valley Public Power & Irr. Dist., 144 Neb. 368, 13 N. W. 2d 401, we approved the following from Federal Reserve Bank v. Neuse Mfg. Co., 213 N. C. 489, 196 S. E. 848:

"That a contract is not made so long as in the contemplation of both parties thereto something remains to be done to establish contract relations is too well established to require the citation of authority. * * * In negotiating a contract the parties may impose any condition precedent, a performance of which condition is essential before the parties become bound by the agreement."

"To establish an express contract there must be shown what amounts to a definite proposal and an unconditional and absolute acceptance thereof." Farmers Union Fidelity Insurance Co. v. Farmers Union Co-Operative Insurance Co., 147 Neb. 1093, 26 N. W. 2d 122.

However, as stated in 17 C. J. S., Contracts, § 44, p. 385: "Where one makes an offer with certain terms or conditions, and accepts an acceptance which is not responsive to the proposal, he is bound by the contract thus made, and cannot fall back on his proposal in case of subsequent disagreement. This acceptance has made a new agreement on the terms of the new offer."

In order to determine the question here involved it will be necessary to examine the evidence relating thereto. The record does not contain any competent evidence that the appellee ever obtained a clear release from the United States Engineers. This was apparently due to the failure of Captain Blore, area engineer, to send appellee's resignation and his, Captain Blore's, recom-

mendation thereon to the District Engineer's office in Omaha until April 24, 1943. The officers who had authority to act thereon were stationed in the District Engineer's office in Omaha.

The negotiations, out of which this litigation arises, had their inception when appellee, an auditor with the United States Engineers located near Scribner, Nebraska, wrote to his friend, Earl Moeller, personnel manager of the appellant corporations and in charge of hiring their personnel, asking for a job.

On February 25, 1943, Moeller replied to this letter advising appellee they could use a man of his ability in their personnel department and then went on to say: "We cannot offer you a job as long as you are with the Area Engineers but if you have a clear release this job would pay you $3600.00 plus your Sunday overtime."

On March 1, 1943, appellee replied to Moeller's letter of February 25, 1943, and advised him that: "I have already given my resignation to the Area Engineer, and I know it will be accepted without question, as of Mar. 15th, so will be looking to you for further orders * * *."

Captain Blore was the area engineer in charge of the Scribner Airfield and the resignation tendered to him by appellee is as follows:

"I hereby tender my resignation from my position as Assistant Clerk, CAF-3, $1620 per annum effective at noon April 6, 1943 for the reason that I am to be employed by a Contractor in Edmonton, Canada.

"I respectfully request resignation without prejudice."

On March 24, 1943, Moeller wrote to appellee and advised him as follows: "I am very sorry to hear that your government resignation was of the type that it is. These engineers here are so much tougher than they were in the states that I am afraid if they should learn of your release it would react against both yourself and the company. However, as you know, what we don't

know on these jobs won't hurt us. Consequently we should not have your release mentioned or designated on your application."

There is nothing in the record to show where Moeller got the information upon which he bases the foregoing statement as to the resignation. Appellee replied to the foregoing letter on March 30, 1943, and informed Moeller as follows:

"Received your letter yesterday and am answering to give you a clear picture of the situation here.

"My resignation to the Government will in no way effect, I am sure, either you or M. H. K. as Capt. Blore is in sympathy with the resignation and will cooperate in every respect for any future controversy that might come up. Will give you exact wording of his reply to my resignation:

" 'Forwarded with recommendation that the resignation be accepted without prejudice effective noon, April 6, 1943, expiration of accrued annual leave. This recommendation is based on the fact that the employee's services can be dispensed with and the resignation is without misconduct or delinquency on the part of the employed. Signed Richard E. Blore, Capt. Corps of Engineers, Area Engineer.'

"I hope this will clear things up for you and also for me as I have been sort of uncertain and I would like to clear up the situation. * * * If everything is satisfactory, wire ticket so that I can leave here April 5, 1943."

Moeller knew the United States Engineers' procedure in regard to a resignation and the necessity thereof. While appellee had advised him he was sure the resignation without prejudice would be accepted yet he had at no time advised him that it had been accepted. Here appellee informed Moeller of what he had done as to his resignation and suggested that if everything was satisfactory to wire him a ticket.

In response to this letter the appellee received the following telegram dated April 9, 1943: "PICK UP

TICKET AT CB & Q STATION YOU MUST SECURE DRAFT DEFERMENT IN DUPLICATE BIRTH CERTIFICATE HAVE UNITEDSTATES EMPLOYMENT CX SERVICE CARD NUMBER FIVE ZERO EIGHT AND CLEARANCE FROM WAR MANPOWER COMMISSION PROCEED TO STPAUL AND CHECK IN AT SIXTY THREE EAST SIXTH STREET FOR YOUR FINAL PHYSICAL EXAMINATION WITHOUT THIS FINAL PHYSICAL YOU CANNOT BE PLACED ON THE PAYROLL—METCALFE HAMILTON KANSASCITY BRIDGE CO MOELLER EDMONTON CANADA."

The evidence shows that in response to the telegram the appellee obtained CX-508 at the United States Employment Service office; that he was advised at the office of the War Manpower Commission that CX-508 was a sufficient release from their office; that he obtained an occupational draft deferment from the draft board; that he had a birth certificate; and that he picked up the ticket at the railroad ticket office.

Appellee testified as follows: "Q—Now, what did you do then? A—I had waited so long to find out, I wanted to be absolutely sure that I had done everything that had been requested of me in the telegram; I' didn't want to leave anything undone to keep from going up there because I was anxious to go up there, and I saw after reading over the telegram later that it asked—that I had to have a release from the War Manpower Commission. I went back to the U. S. Employment Agency —both the agencies were in the same building, and the same people as far as I know—I went back to them and asked them about getting a release from the War Manpower Commission and they told me that this CX-508 was all that was necessary for me to have. Q—Did you contact the defendants with reference to this matter? A—I told Mr. Moeller in a telephone conversation what I had and that I didn't have any clearance from the War Manpower Commission as far as credentials were

concerned, but he said if I had CX-508 that was all that was necessary."

Thereafter, by reason of two telegrams, one from the appellants' office in St. Paul, Minnesota, dated April 14, 1943, and the other from Moeller at Edmonton, Alberta, Canada, dated April 18, 1943, the appellee was advised not to report and to return his ticket.

From the foregoing facts, which are undisputed, it is apparent that at the inception the appellants' offer of employment required appellee to have a clear release. However, after Moeller's letter of March 24, 1943, which in part relinquished this requirement, appellee wrote Moeller advising in full what he had done and stating that if what he had done was satisfactory to wire him a ticket. Moeller thereupon wired him a ticket and advised what additional requirements he would have to comply with. Having done so, but feeling uncertain because he had no written evidence of clearance from the office of the War Manpower Commission, he called Moeller and advised him in regard thereto. Moeller advised him that what he had was all that was necessary. We think these facts, as a matter of law, bring this within the rule as hereinbefore quoted from 17 C. J. S., Contracts, § 44, p. 385, that when one makes an offer with certain terms or conditions, and thereafter accepts an acceptance or counter offer which is not completely responsive to the proposal, he is bound by the contract thus made and cannot fall back on his proposal in case of subsequent disagreement.

By its instructions the court placed upon the appellee the burden of establishing an issue which, under the facts of this case, should not have been submitted. But such is not an error of which the appellants can complain. As stated in In re Estate of Keup, 145 Neb. 729, 18 N. W. 2d 63: " ' "The giving of erroneous instructions is not cause for reversal, if the instructions are more favorable to the complaining party than he is entitled to under the law." (Webb v. Omaha & S. I. R.

Co., 101 Neb. 596, 164 N. W. 564).' Holley v. Omaha & C. B. Street Ry. Co., 110 Neb. 541, 193 N. W. 710. The rule is stated in 5 C. J. S., sec. 1678, p. 824, as follows: 'Any error in sending the case or an issue to the jury is not a basis for objection on appeal where it operates in favor of appellant; and so a submission of the case to the jury furnishes appellant with no ground of complaint where the evidence is such as to warrant the court in directing a verdict against him. * * * or where such submission gives the jury an opportunity to find against appellee on a question of fact that should not have been submitted to it; * * *.' "

For the reasons stated we find the verdict and judgment of the trial court should be affirmed.

AFFIRMED.

WENKE, J., participating on briefs.

NUSS, District Judge, dissenting.

I cannot bring myself to agree with the conclusion of the majority, although I agree with them on everything down to the question of waiver, or, accepting of a counter offer, as the majority terms it. My disagreement with the majority is (1) that the issues and the theory of the case have been changed and (2) that there is no evidence of any waiver of the "clear release."

The case was brought by the plaintiff, defended by the defendants, and tried and submitted by the court, upon the issue and theory, not of waiver, but of performance of the condition precedent as to a "clear release." To that end Exhibit 9 was offered and received. The plaintiff did not claim that the defendants had waived anything or receded in any degree from their original requirement of a "clear release." Consistent with that theory of the plaintiff he offered Exhibit 9, which if admissible would sufficiently have shown a "clear release." The majority affirm the case not on the basis that Exhibit 9 was admissible, not on the basis that the evidence showed performance, but upon the theory that there was a waiver of that re-

quirement. Indeed, the court goes further and holds that by the submission of that issue of performance of the condition precedent the case was submitted more favorably to the defendants than they had a right to expect. The majority concedes that to constitute a "clear release" the resignation of the plaintiff would have had to be accepted by the proper officer in the Omaha office. The majority concedes that the letter of resignation and recommendation of Capt. Blore was not forwarded until about ten days after the defendants had withdrawn the offer. The majority concedes that Exhibit 9 was inadmissible and that there is nothing else whatever tending to show a "clear release."

I cannot agree that the submission of such issue with nothing but inadmissible evidence to support it can be favorable to a defendant who has throughout the whole trial and up until he comes into this court been led to believe that the plaintiff had to prove performance. The verdict of the jury is consistent with the whole theory of the case. With Exhibit 9 submitted to it and being informed that it could consider the exhibit, the jury logically arrived at the conclusion that the plaintiff had a clear release. The jury, however, did not pass upon the question of waiver. That matter has now for the first time been brought into the case. If the question of waiver is in the case the jury should have passed on that and it is my opinion that this court should not substitute a verdict based on waiver for an erroneous verdict based upon inadmissible and prejudicial evidence.

Nor do I believe there is any evidence of waiver in this record. The original offer of February 25, 1943, contained the condition precedent that "We cannot offer you a job as long as you are with the Area Engineers but if you have a clear release," they could offer him a position. On March 1 the plaintiff wrote to defendants that he had given his resignation to the area engineer "and I know it will be accepted without question, as of

Mar. 15th." The defendants then and at all times there-
after had every reason to believe that the resignation
would be accepted in due course and doubtless as-
sumed that it had been accepted. With reference there-
to the majority says: "While appellee had advised
him he was sure the resignation without prejudice would
be accepted, yet he had at no time advised him that it
had been accepted." In all deference I submit the im-
portant fact is that he did not advise them that it had
*not been accepted.*

In brief, the burden of proof was on him to prove
his case. The burden was on him to prove that they
knew or, at the least, had sufficient reason to know that
his resignation had not been accepted. Had that been
the evidence, then I could freely agree that the tele-
gram of April 9, 1943, would have constituted a waiver
or a recession from the condition precedent. The record
is utterly void of any evidence to show that the de-
fendants knew or should have known that the plain-
tiff's resignation had not been accepted. They had
every right to assume that that requirement had been
fully complied with when they sent their telegram of
April 9 setting out the routine requirements which the
exigencies of war and the rules and regulations of the
war agencies demanded.